**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| DINA UCCIARDI, *et al.*, | : |
| | : |
| Plaintiffs, | : |
| | : |
| | : Civ. Action No. 13-4952(FLW) |
| v. | : |
| | : **OPINION** |
| E.I. DU PONT NEMOURS AND CO., | : |
| | : |
| Defendant, | : |
| | : |
| v. | : |
| | : |
| BOROUGH OF SPOTSWOOD, *et al.*, | : |
| | : |
| Third-Party Defendants. | : |
| | : |

---

**WOLFSON, District Judge**:

Plaintiffs [1] are homeowners whose personal properties were damaged by flooding, in August 2011, as a result of Hurricane Irene.  They brought the instant suit, accusing Defendant E.I. Du Pont Nemours and Co. ("Defendant" or "Dupont"), which operates the Duhernal Lake Dam, located in Old Bridge, New Jersey, of neglecting to activate the Emergency Action Plan and to timely advise Old Bridge Township Office of Emergency Management ("OBT-OEM") of a Dam Warning

---

[1]       The following are the named plaintiffs: Dina Ucciardi; Joseph Ucciardi; Karl Seper; Carol Seper; Pasquale Sorrentino; Minkah Fitzpatrick; Melissa Fitzpatrick; Patricia Hollander; Toby Hollander; Vincent Variale; Michelle Variale; Susan Szlek; Edward Szlek; Patricia Salva; Michael Salva; Barbara Forsythe; Timothy Wilson, Sr., deceased; Caroline O'Leary; Daniel O'Leary; Julius Giacalone; Joyce Giacalone; and Virve Lane (collectively, "Plaintiffs").

Condition. According to Plaintiffs, Defendant's failure to take those actions deprived them of sufficient time to protect their property. In the instant matter, Defendant moves for summary judgment on the sole remaining negligence claim on the basis that Plaintiff's only purported evidence of negligence, an expert report submitted by Eric J. Ditchey ("Ditchey"), PE, is unreliable and inadmissible. Additionally, Third-Party Defendant Borough of Spotswood ("Spotswood") moves for summary judgment on Defendant's claims for contribution and indemnification.[2] For the reasons set forth herein, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's Second Amended Complaint is **DISMISSED**. Since Defendant is relived of liability, Spotswood's motion for summary judgment is correspondingly **GRANTED**, and the Third-Party Complaint is **DISMISSED**.

## BACKGROUND and PROCEDURAL HISTORY[3]

The following relevant facts are not in dispute, unless otherwise noted. Defendant operates the Duhernal Lake Dam,[4] located in Old Bridge, New Jersey. As

---

[2]    Defendant filed a Third-Party Complaint against the following governmental entities: Borough of Spotswood, Middlesex County and Borough of Jamesburg. By Order dated April 15, 2016 ("April Order"), based on the parties' stipulations, the Court dismissed Defendant's claims against Middlesex County and Jamesburg. *See* Order dated April 15, 2016, ¶ 5.

[3]    I note that certain of the recounted facts are based on the expert reports of both parties that discuss undisputed, statutory-based obligations of a dam operator in New Jersey. Thus, I cite those expert reports only for the purpose of setting forth those undisputed background facts.

[4]    Duhernal Lake Dam is a Class II, Significant Hazard Dam, located on the South River in Old Bridge and East Brunswick Townships, New Jersey. The Dam forms Duhernal Lake which serves to recharge groundwater for a water supply

an operator, Defendant is tasked by state statute and regulations to establish an Emergency Action Plan ("EAP"), which implements procedures necessary to minimize hazard to life and damage to property in areas that could be affected by a dam failure related release. *See* N.J.A.C. 7:20-1, *et seq.*; N.J.S.A. 58:4-1, *et seq.* ("Safe Dam Act").  More specifically, the EAP institutes, *inter alia*, a monitoring system to identify emergency conditions, and communication and notification procedures to facilitate emergency control, termination and recovery.  *See* Ditchey's Report, p. 3; Christopher Adams'[5] April 2016 Expert Report ("Adams' Report"), p. 2.  In the event of a Dam Warning Condition,[6] pursuant to the EAP, it is the responsibility of the dam operator to call the entities on the Emergency Notification Flowchart, including the individual townships, when specified critical triggers are met.  *See* Adams' Report, p. 3; Ditchey's Report, p. 4.  An example of a Dam Warning Condition is when "water level of the lake is at an unsafe level (3 feet of water over the spillway) and is rising threatening to overtop the dam."  Ditchey's Report, p. 4.  Once a downstream municipality, in this case Old Bridge Township, is notified by the dam operator, the Office of Emergency Management of that municipality may, according to its specific

---

system — the Duhernal water System.  *See* Ditchey's February 2016 Expert Report (Ditchey's Report"), p. 2.

[5]   Adams is an expert hired by Defendant.  He submitted an expert report in this case in April 2016.

[6]   A Dam Warning Condition "is any developing or occurring event or circumstance which is or may adversely affect the integrity of the dam but is considered controllable."  Ditchey's Report, p. 4.

emergency procedures, issue a public warning to the township's residents.  *See* Adams' Report*, p. 4; Ditchey's Report, p. 4.

In late August 2011, Hurricane Irene hit New Jersey, causing flooding to low-lying areas adjacent to rivers and streams throughout much of the State, including Old Bridge.  Plaintiffs were all residents of that township, and they lived adjacent to, and immediately downstream from, Duhernal Lake and the dam.  There is no dispute that Plaintiffs' personal properties were damaged as a result of an overflow of flood waters from Duhernal Lake.  Plaintiffs unequivocally testified that the flooding to their homes occurred between 9:00 a.m. and 10:00 a.m. on August 28, 2011.  Defendants' Statement of Undisputed Material Facts, ¶ 5 (citing to various Plaintiffs' Depositions).[7]  According to Plaintiffs, the damages could have been prevented if they had sufficient time to react to the impending flood.  Plaintiffs fault Defendant for its failure to activate the EAP and inform OBT-OEM that flooding was imminent.  In order to prove negligence, Plaintiffs primarily rely on an expert report submitted by Ditchey, who opined that Defendant breached its standard of care when operating the Duhernal Lake Dam at the time Hurricane Irene hit New Jersey.[8]

Plaintiff's Second Amended Complaint initially asserted six causes of action. By the parties' stipulations, the Court, in its April Order, dismissed five out of the six claims with prejudice.  *See* Order dated April 15, 2016, ¶ 1.  The only remaining claim

---

[7]    I note that Plaintiffs have not disputed this fact in their Counterstatement of Undisputed Facts.

[8]    Ditchey's opinions will be discussed in detail, *infra*.

subject to the instant motion is a negligence claim in Count Four.  However, the parties agreed to limit the scope of that claim, which was reflected in the April Order, as follows:  "All negligence claims in Count Four of the Second Amended [Complaint] are dismissed in their entirety with prejudice by agreement of the parties except for the currently alleged claim that DuPont/Duhernal failed to activate its Emergency Action Plan (EAP) in connection with Hurricane Irene in a timely manner and provide EAP notice to the Old Bridge Office of Emergency Management in accordance with the expert opinion of Eric Ditchey, P.E. ('EAP-Related Claim')."  *Id.* at ¶ 2.  In addition, notwithstanding the various types of monetary relief they seek in their Second Amended Complaint, Plaintiffs have limited their damages to personal property damages only.   Defendant also asserted third-party claims against Spotswood for contribution and indemnification.

In the instant matter, Defendant moves for summary judgment on the negligence claim.  Spotswood also moves for summary judgment on Defendants' third-party claims.

## DISCUSSION

## I.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find

for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the

pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## II.   Negligence

To make a *prima facie* case of common law negligence in New Jersey, a plaintiff must establish four elements: (1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3) causation, and (4) actual damages. *Brunson v. Affinity Fed. Cred. Union*, 199 N.J. 381, 400 (2009). Ordinarily, the plaintiff bears the burden of proving each of these elements. *Id.* "The mere showing of an incident causing the injury sued upon is not alone sufficient to authorize the finding of an

incident of negligence." *Long v. Landy*, 35 N.J. 44, 54 (1961). "An inference [of negligence] can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." *Id.* Indeed, an expert's opinion may be used to prove elements of negligence, particularly if the subject matter of the alleged negligent act is technical or beyond the kin of the factfinder. *See* Fed. R. Evid. 702; *Johnson v. Marberry*, 549 Fed. Appx. 73, 74-75 (3d Cir. 2013); *see, e.g.*, *Jerista v. Murray*, 185 N.J. 175, 194 (2005); *Scully v. Fitzgerald*, 179 N.J. 114, 128-29 (2004).

### A.   Ditchey's Expert Report

On the single remaining EAP-Related Claim, Plaintiffs' only support for the liability and proximate cause elements of negligence is the expert report of Ditchey. I will briefly summarize that report.  Ditchey based his review on eight documents: (1) Duhernal Lake Dam's EAP; (2) Deposition of James Poltricktzky; (3) Deposition of Scott Parkstrom[9]; (4) Deposition of George Sichta; (5) Deposition of Thomas Gadziala[10]; (6) United States Geological Survey ("USGS") Annual Park Stream Flow Data from Manalapan Brook at De Voe Lake; (7) USGS Topographic Map of the

---

[9]    Parkstrom, employed by Defendant, worked at the Duhernal Dam on August 28, 2011, the day of the subject flooding.

[10]   It appears Poltricktzky, Sichta and Gadziala were the operators who worked at the Duhernal Lake Dam.  I note that neither party submitted these individuals' deposition transcripts.  Therefore, I am unable to review their testimony.  However, because the dispositive issues on this motion do not depend on or touch upon these depositions, the lack of these transcripts does not impede my decision-making here.

general area; and (8) New Jersey Department of Environmental Protection, Bureau of Dam Safety and Flood Control's (NJDEP – BDSFC) letter to Defendant.

Based on his review, Ditchey made various findings in his six-page report. First, he opined that the EAP at issue was not updated annually as required by NJDEP guidelines for developing an EAP. *See* Ditchey's Report at p. 3. Ditchey also observed that Defendant was behind 6 years in performing inspections and did not commence certain repairs and maintenance analyses. *Id.* at p. 4. Ditchey also discussed Defendant's failure to properly activate the EAP following an unrelated earthquake occurrence in August 2011, prior to Hurricane Irene. Ditchey opines that particular failure to implement the EAP is "another example of a lack of training and understanding of the operations personnel regarding the meaning and the intent of the contents in the EAP." *Id.* at p. 5. Finally, according to Ditchey, the water level on August 28, 2011 at Duhernal Lake met the criteria for a Dam Warning Condition, but the operators over several shifts did not activate the EAP. Ditchey further opined that activation of the EAP would have likely provided the downstream-residents, such as Plaintiffs, timely notification of the flooding. *Id.* at p. 6. It is Ditchey's expert opinion that "the notification of the flooding potential would have given these residents time to react, allow them time to prepare for the flooding, move valuables from lower levels to upper levels, and likely reduce the amount of damage to personal property." *Id.*

### B.      Admission of Ditchey's Report

To defeat summary judgment, Ditchey's Report is being utilized by Plaintiffs as evidence to establish causation and breach of Defendant's standard of care, which are essential to make out a *prima facie* case for negligence.  On its motion, Defendant argues Ditchey's expert opinions should not be admitted because they are baseless and unreliable.  At the outset, I first decide which part of Ditchey's Report is relevant to the EAP-Related negligence claim.  While Ditchey made various conclusions, upon my inspection, only one aspect of his report is directly related to that claim.  As I have summarized above, Ditchey concluded that Defendant failed to inspect the dam and make certain repairs.  He also blamed Defendant for failing to update the EAP according to NJDEP's guidelines.  However, those opinions do not have any bearing on Plaintiffs' negligence claim.  To be clear, Plaintiffs' sole claim here is whether Defendant acted negligently in failing to implement the EAP and contact the OBT-OEM when a Dam Warning Condition occurred.  As Ditchey made clear, the EAP — that existed at the time Hurricane Irene hit New Jersey — instructed that in the event the water level reaches 3 feet over the spillway of the lake, Defendant was required to provide notification to various townships.  In that specific context, the issue whether Defendant should have updated the existing EAP, or performed inspections/repair to the dam, do not have any bearing on Defendant's liability vis-à-vis the EAP-Related negligence claim.  Nor do Ditchey's comments regarding

Defendant's previous failure to activate the EAP during an unrelated earthquake event establishes causation for the particular negligent conduct raised here.[11]

Indeed, the only portion of Ditchey's expert that speaks to causation or Defendant's breach of the standard of care, is his opinion that Defendant should have activated the EAP since a Dam Warning Condition existed.  In Ditchey's view, Defendant's failure to do so proximately caused Plaintiffs' damages, and Ditchey's so testified at his deposition:

> Q.     Okay. So the only issue that's in play in this case that you think caused the plaintiffs' damages is the failure of Duhernal to make [its] EAP calls to Old Bridge emergency management? There's nothing else in your report that reflects what you think caused the plaintiffs' personal property loss. Would you agree with that?
>
> A.     I would agree with that.

Ditchey's Dep., T73:3-11.

> Q.     So this whole case is about whether Old Bridge emergency management got a call from Duhernal?
>
> A.     Or just whether or not the Duhernal operators made those calls.

*Id.* at T81:4-8.  Accordingly, I will turn to that portion of Ditchey's Report and determine whether those opinions are admissible for consideration on this motion for summary judgment.

---

[11]     I acknowledge that Defendant's alleged failure in this respect may be relevant to generally show inadequate training; however, as discussed, *infra*, because the dismissal of Plaintiffs' negligence claim does not turn on any issue regarding training, Ditchey's opinion on Defendant's training practices is not probative to prove causation here.

The Supreme Court set forth the standard for admitting expert opinions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Daubert* made trial courts the gatekeepers for determining the admissibility of expert opinions and explained that, in order for an "opinion" to be admissible as "'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation - i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. Federal Rule of Evidence 702 governs the admissibility of expert opinions and it has three components:  (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).

For the second requirement, "'an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994)).  In evaluating whether a particular methodology is reliable, a trial court should consider several factors: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to

which the method has been put. *United States v. Downing*, 753 F.2d 1224 (3d Cir. 1985); *Pineda*, 520 F.3d at 247-48.

Here, Defendant argues that Ditchey's opinion regarding Defendant's failure to activate the EAP during Hurricane Irene is unreliable.[12] This Court agrees; neither Ditchey's Report nor his deposition testimony refer to any facts or evidence to support his bare conclusion that Defendant was negligent in failing to activate its EAP at a time that would have provided Plaintiffs an opportunity to avoid their alleged personal property damages due to flooding. First, as to his report, Ditchey's liability opinion does not provide an appropriate standard of care for dam operators, whether it be by way of industry, statute or custom and practice. Indeed, the report lacks any articulation of a baseline standard of care to which Defendant should be held. *See Maresca v. Mancall*, 135 Fed. Appx. 529, 530-31 (3d Cir.), *cert denied*, 549 U.S. 816 (2005) (finding that expert's opinion is inadmissible when it did not establish the proper standard of care or a breach of that standard).

Next, while Ditchey is critical of Defendant for its failure to implement the EAP, the expert does not provide a timeline or chronology of the events that occurred prior to the flooding of Plaintiffs' residences. Significantly, the report does not set forth any factual bases for Ditchey's opinion that Defendant should have activated the EAP well in advance of the flooding. In that connection, the Report is silent as to when the water level reached three feet over the spillway, which would have triggered a Dam Warning Condition.

---

[12]    Defendant does not dispute Ditchey's qualifications as an expert in this matter.

Ditchey's deposition testimony underscores the deficiency of his opinions in this regard. Ditchey admitted that he did not review any documents relating to the events that occurred between August 20, 2011 and August 29, 2011, other than what was listed in his report. Ditchey's Dep., T25:20-25. Significantly, Ditchey did not review any of Plaintiffs' deposition testimony, and therefore, the expert was unaware when Plaintiffs' homes flooded. *Id.* at T26:16-22. This is critical because Ditchey essentially admitted that he had no knowledge that Plaintiffs' homes flooded between 9:00 a.m. to 10:00 a.m. on Sunday, August 28, 2011. Ditchey also did not review any of the Duhernal operator log entries during the relevant period before and after the flood at issue. *Id.* at T26:1-5. In that respect, while Ditchey opined that, based on the operators' testimony, at some point in time flooding at the Duhernal site reached five feet, he was not aware when the flood water reached that level — whether it was before or after Plaintiffs' homes flooded. *See id.* at T75:14-T76:5. On this point, Ditchey testified:

> Q. And when you say that the operators . . . thought it was approximately five feet above the fence[,] [w]e don't know when that happened do we?
>
> A. I don't, no.
>
> Q. Does anyone?
>
> A. I don't know. I do not know. I don't.
>
> * * *
>
> Q. And you haven't seen anything from any other source that would tell us that?
>
> A. Correct.

Q.  Or when it reached three feet above the spillway.

A.  Correct.

Q.  We don't know that?

A.  We don't know when it occurred, right.

Q.  And you can't say within a reasonable degree of engineering certainty whether that point – that three feet over the dam, over the spillway – was reached before [the operators] were evacuated?

A.  I do not know.

Q.  Do you know whether any of plaintiffs' homes were flooded before the level of the water reached more than three feet over the spillway?

A.  I do not know that.

*Id.* at T75:3-T76:16. Based on Ditchey's own testimony, he lacks the proper factual foundation to render his opinion on causation.

Even setting aside that reliability issue, Ditchey testified that his conclusions were not rendered with the requisite degree of certainty.  *See In re Paoli R.R. Yard Pcb Litig.,* 35 F.3d 717, 751 (3d Cir. 1994)(upholding grant of summary judgment for defendants where plaintiffs' expert could not testify on causation "with a reasonable degree of certainty"); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 150 (3d Cir. 1999); *Johnson v. Smithkline Beecham Corp.,* 55 F. Supp. 3d 603, 613 (E.D. Pa. 2014); *Hurley v. Thompson*, No. 13-1502, 2016 U.S. Dist. LEXIS 87527, at *50 (M.D. Pa. Jun. 29, 2016).

Q.  So what time should Duhernal or DuPont, you know, whether it be the operators in your mind . . . what day and what time should they have called Old Bridge emergency management people?

A.  Well, I can't say specifically the time.  They should have been out watching the dam, and if the water over the dam was approaching three feet, then those phone calls should have been made.

Q.  Yeah, but how do you say – without knowing that, without knowing that, how do you say activation of the EAP would have likely provided the residents downstream of the dam notification of the flooding in a timely manner?

And then go on to read the last sentence [of the Expert Report], Notification of the flooding potential would have given them time to react, allow them time to prepare for the flooding, move valuables from lower levels to upper levels, and likely reduce the amount of damage to personal property.

How do you do that when you don't tell us or don't know when that was?  How do you be critical of DuPont, not knowing the timing?

A.  In that sentence I'm using the word "*likely*."  In my mind, if the EAP was activated, it ***may*** have resulted in the notification of those downstream homeowners with enough time that if they chose to move valuables out of the way they could have.

I'm not saying – it's not meant to be an absolute certainty.  I don't think my words presented that way.  I think my words presented in a way that it's a ***possibility*** outcome if the EAP was activated.  I'm not saying anything stronger.

Q.  So you can't say it's more probable than not.  It's just a possibility.

A.  That's right.

* * *

Q.  So just to place a fine point on where we finished before, you cannot say within a reasonable degree of engineering probability or certainty that any of the claims of negligence or conduct that are contained in your report proximally caused the plaintiff's personal property damage or the flooding that occurred to their houses.

A.  That's correct.

*Id.* at T82:8-T83:21; T108:25-T109:7 (emphasis added).

Based on the foregoing, I find that Ditchey's Report, his opinions and conclusions do not meet the reliability requirement of *Daubert* because they were not based on adequate factual foundation, but rather they rested on improper assumptions. Moreover, the opinions provided by Ditchey do not meet the requisite degree of certainty. Accordingly, Plaintiff's expert report is excluded. *See Sharpe v. Robbins*, No. 07-1897, 2009 U.S. Dist. LEXIS 52792, at *4 ("An expert's opinion, however, must be supported by the factual evidence and not based solely on the expert's conclusions."); *Marvel v. Del. Cnty.*, No. 07-5054, 2009 U.S. Dist. LEXIS 46755, at *17 (E.D. Pa. June 2, 2009), *aff'd*, 397 Fed. Appx. 785 (3d Cir. 2010) ("An expert report that merely offers conclusory opinions, without explicit factual foundation, is insufficient to defeat a motion for summary judgment.") (quotation and citation omitted); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("An expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment."); *Zeller v. J.C. Penney Co.*, No. 05-2546, 2008 U.S. Dist. LEXIS 25993, at *7 n.13 (D.N.J. Mar. 31, 2008) (noting that "an expert's bare conclusions are not admissible under" the Federal Rules of Evidence); *Edison Wetlands Ass'n, Inc. v. Akzo Nobel Chems., Inc.*, No. 08-419, 2009 U.S. Dist. LEXIS 119281, at *2 (D.N.J. Dec. 22, 2009) (holding that "the expert must have good grounds for his or her belief" and that courts "need not admit bare conclusions or mere assumptions proffered under the guise of expert opinions") (quotations and citations omitted); *Hurd v. Yaeger*, No. 06-1927, 2009 U.S. Dist. LEXIS 72032, at *4 (M.D. Pa.

Aug. 13, 2009) (holding that "an expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury")(quotation omitted).

Having excluded Plaintiffs' expert report and the expert's conclusions — the only evidence upon which Plaintiffs rely to establish causation[13] — this Court finds that Defendant is entitled to summary judgment.[14] *See Cabrera v. Ross Stores of Pa., LP*, 646 Fed. Appx. 209, 212 (3d Cir. 2016) ("[T]he District Court did not abuse its discretion when it granted Defendants' motion . . . to bar Plaintiff from introducing expert testimony . . . . The District Court was then also correct to grant summary judgment in favor of Defendant . . . for want of evidence to support the element of causation."); *Mercedes-Benz U.S.A LLC v. Coast Auto. Group, Ltd.*, No. 99-3121, 2006 U.S. Dist. LEXIS 71953, at *28 (D.N.J. Sept. 29, 2006) ("[T]he Court finds that [Defendant's expert] opinions . . . are not reliable, should be stricken and the Court grants summary judgment on Counts Five through Ten of Coast defendants amended counterclaim."); *Ortiz v. Yale Materials Handling Corp.*, No. 03-3657, 2005 U.S. Dist. LEXIS 18424, at *2 (D.N.J. Aug. 24, 2005) ("[T]he Court bars the proposed testimony of Plaintiff's expert [and] finds that Plaintiff's motions are now moot because without an expert to support Plaintiff's alternative design theory, Plaintiff's products liability

---

[13]   I reiterate that the parties have stipulated that the sole negligence claim Plaintiffs are pursuing relates only to Defendant's failure to activate its EAP in accordance with the expert opinion of Ditchey.  *See* April Order, ¶ 2.

[14]   Plaintiffs argue that summary judgment is improper because the competing expert reports submitted by the parties create "a battle of experts."  However, since I have excluded Ditchey's report, that argument is mooted.

claim against Defendant fails, and thus, grants summary judgment in favor of Defendant."); *see also Caviness v. Holland*, No. 15-4017, 2011 U.S. Dist. LEXIS 31328, at *47 (S.D. Ga. March 17, 2011) ("Plaintiff [cannot] overcome Defendant's motion for summary judgment. This is because without expert testimony there is no evidentiary basis upon which a reasonable juror could determine whether the existence of a defect on the date in question equated to a breach of Defendant's duty to maintain a reasonable workplace."); *Meyers v. AMTRAK,* 648 F. Supp. 2d 1032, 1044 (N.D. Ill. 2009) (Plaintiff "relies heavily on his proposed experts to present evidence relating to [Defendant's duty, breach of that duty, and causation]. In the absence of such expert testimony, [Plaintiff] has not pointed to any evidence that would raise genuine issues of material fact with respect to his FELA claims . . . . Therefore, we grant [Defendant's] motion for summary judgment in its entirety."); *Sutherland v. Matrixx Initiatives, Inc.*, No. 04-AR-0129-M, 2006 U.S. Dist. LEXIS 96652, at *41 (N.D. Ala. Nov. 7, 2006) ("[T]he court will grant [Defendant's] motion to exclude the testimony of Dr. Jafek and, as night must follow day, will grant [Defendant's] motion for summary judgment because without an expert to connect a toxin to an injury, there is no toxic tort."); *Campbell v. McMillin*, 83 F. Supp. 2d 761, 766 (S.D. Miss. 2000) ("Plaintiffs will be precluded from presenting . . . expert testimony . . . . Without such evidence, a causal link between [Plaintiff's] death and any action and/or inaction by the Defendants cannot be proven. Therefore, no genuine

issue of material fact exists and the Court should grant summary judgment in favor of the Defendants.").[15]

Because I have dismissed Plaintiffs' claims against Defendant.  Third-party Spotswood's motion for summary judgment on Defendant's third-party claims of contribution and indemnification is likewise **GRANTED**.

CONCLUSION

For the foregoing reasons, both Defendant's and Spotswood's motions for summary judgment are **GRANTED**.

DATED: December 19, 2016                           /s/ Freda L. Wolfson
                                                   Freda L. Wolfson
                                                   U.S. District Judge

---

[15]    Defendant also argues that summary judgment is proper because the flooding and resulting personal property damages occurred as a result of an "Act of God" for which Defendant is not liable.  Because I have granted summary judgment on other grounds, I need not reach this issue.